Would the clerk call the case? 3-24-05-11 SBC Waste Solutions, Inc. Appley v. Christopher Flood, Appellant Mr. Cooney, if you're ready to proceed. Yes, Your Honor. Good afternoon, Your Honors. This is John Cooney and with me is my law partner, John Moynihan. We represent Christopher Flood in this matter. This matter comes down to the application of the Dissenters' Rights Act under Illinois, which is found at 185 ILCS 511.65 and 11.70 as the procedures. The legislature gave shareholders these rights and limited the rights for shareholders' dissent actions to a right to dissent on corporate actions to protect them from what they would deem as an improper or oppressive corporate action. The Dissenters' Rights Act is enacted to protect the rights of the dissenting shareholders, and the remedial legislation should be construed liberally to that effect. That's a quote from the Dissenters' Rights Act. The legislature set forth four classes of corporate actions that they gave those rights to them, and only these rights, only these actions. One is when the corporation was going to be consolidating or merging. The second one is the lease or substantially all of their assets, and that substantially all was added in response to the Fisk-Toy decision that was cited by both parties in their briefs. The third area is to amend Articles of Incorporation bylaws that adversely affect a shareholder in certain circumstances. One, where it's going to abolish preferential right. Two, it's going to affect redemption rights, and three, for corporation activity, cutting out voting rights for pre-1982 corporations. And the other one, the final one, the fourth one, is under the corporation action in the articles that are set forth in the Articles of Incorporation or in the bylaws or in a board resolution, giving a shareholder a right to dissent and obtain payment of their subject to the corporation complying with Section 11.70. In this case, none of these, none of the actions pled or shown at trial or ever established throughout all the motion practice in this matter, SBC did not identify one single one of those corporate actions, and it's only these ones. At that point, the court can just stop their analysis right there, shut me off and say, we don't have to go any further, because you don't have to go any further. But if you do, then the corporation has to comply with Section 11.70 in the procedures. What's the purpose of that is to give the shareholders, a shareholder the right and the knowledge of what is going on with the corporation and that they have a right to dissent. Most corporate shareholders don't have that knowledge, and what procedures they have to follow to do that, to make a dissent and say, hey, I want out of this corporation, buy my shares back. And it's only in those four circumstances. If they go out and they buy new cars for everybody, that's not a grounds to sit there and say, I wanted to sell my shares and you guys have to buy them back from me. You don't have that right. It's only those four areas. So when the center is given that notice, or a corporate action is going to be taken by the corporation, they have to give the shareholder notice, written notice, either at the share or that a shareholder meeting is going to take place, or there's going to be a corporate action and tell them, tell the shareholder or shareholders, they have a right to dissent to this action. And if you do dissent to this action, these are the procedures you have to take. You have to notify us and say that you want to sell your shares if the corporate action is accepted. And the center has to vote against the corporate action, not in favor of it. If there's not going to be a shareholder meeting, then it comes under section B of 1170, which says, if it's done by resolution, same deal. You have to give them the notice. You have to give them all the disclosure so that they can make an objectively, and it states it in their objection, so that the shareholder can objectively make a determination to exercise its dissenter rights. That has to be done. And if the center does that, complies with the procedure established by the corporation, which is required by Illinois law under the Business Corporation Act, the CBA, then within 10 days of that corporate action being consummated and going into effect, or 30 days from the date of the notice from the shareholder saying, you know, I want you to buy back my shares, they have to give financial statements, a commitment to pay the amount, pay the amount of what they say their shares are. They have to determine what their, what the value of each share is. The shareholder, that's under section C, under D, or E, the shareholder can object to that. In objecting to that, they would sit there and say, I got the financial documents from the corporation. I determined this is how much my shares are worth. I disagree with the corporation. Has to give them notice of that. If that's agreed to, then the money gets paid. They get shares and we're not here sitting here today. After the shareholder objects, then if there's a difference, the corporation under section F has two options. Either pay the difference from what they said it was and what the shareholder says it was, so the shareholder's amount is fully paid, or file suit within 60 days and say, I want the court to make this determination. Only then, after this disclosure of financials and the cross motions or the cross offers are made, does section G kicks in where the court can sit there and appoint an appraiser or two appraisers to assist it in making this determination as to what the value of the corporate shares are. As I stated before, SBC, the plaintiff, the appellee in this case, never once set forth any elements or any factual allegations or even hint to anything that came close to a section 1165 action, one of those four actions. They say that we waive that issue. They say that they gave us notice. However, we objected to it when they have filed their, or there's a motion to dismiss when they filed their amendment complaint, including the claim for the dissenter rights, using it as a sword to cut out Christopher Flood from being a shareholder. We raised it in the response to the objection to a motion to appoint an appraiser. That was redone on June 29th, 1920, right after the amendment complaint was filed. There's an objection to their motion filed in March of 2021, SBC's motion to file a motion to clarify the date of the valuation for the appraisal. On April 8th, 2021, Chris Flood objected and raised again that they have not named any corporate action. We did it again in the motion to reconsider the court's appointment of an appraiser in our motion to reconsider on May 17th, 2022. Set forth the same statutory sections, the same provisions, the same failure, citing the Hunter case I just cited, as well as a host of other cases saying that they have to first get past that bar of an 1165 action. Our objections to this was preserved by the court on 8-30-2022, after she ordered Chris Flood to sign the contract of the appraiser. She stated specifically the execution of Chris Flood's signature shall not constitute a waiver or forfeiture of Christopher Flood's right to appeal the court's order requiring an appraisal or Mr. Polash, which was the only thing that was up before the court at that point in time. That appeal, that was our first appeal that was before the court. Again, came back from appeal. It was new judge, Judge Chapman, on March 8th, 2024, on our motion to compel discovery answers, the question was posed to SBC's counsel, what action have you pled or what action do you claim is an 1165 corporate action that would invoke the Dissenter Rights Act? None was given. The court gave them time, step out in the hall, find out what it is. It's in the transcript, your honors. And they came back in, no answer was ever provided. Went to a couple day trial, no allegation was pled, no testimony was made as to an action. And further, even if they did that, there's no allegation, there's no evidence of any notice provisions, any compliance, not even has to be followed for those protective rights are deliberately construed in favor of the shareholder, not in favor of the corporation on doing this. So we finished the trial and we lost. No determination was ever made of an 1165 action was made or that the dissenter rights were followed. There's no finding the fact, no nothing. There's no summary judgment. Nothing was raised by the plaintiffs to establish that the court order set an appraisal value of the shares and said, Chris Flood has to sell those shares. No authority for that. The court cannot make, CBA is a creature statute. Whatever the statute says, the court does not have the right to create substantive law that corporations and shareholders have to follow. It's set up by the legislature. That's under the Collier decision, Collier versus Collier decision. It's been longstanding. Here, it was created. Judge Wheaton recognized that the act wasn't followed and said, I have an inherent power to do, appoint an appraiser. Well, under managing the document, the court in SBC Flood 1, appeal 1, agreed that it wasn't right because it was within the jurisdiction of the court to manage your own docket, appoint the appraiser. But the court couldn't create a fifth 1165 reason for a dissenter to assert dissenter rights. Now, in order to get around this, SBC raised several issues. They raised standing. Well, standing isn't applicable here because standing is do you have the right to bring a suit? Did SBC have a right to assert that an 1165 action occurred and that they gave the 1170 notice to Mr. Flood? Yes, they had standing to bring that. However, in the motion to dismiss, they didn't allege any notice and no 1165 actions. So then they raised out, this is not de novo review, but it goes to the issue of law on the motion to dismiss. It goes to an issue of law on the motion to reconsider as to the court's previous application of the law to the allegations in the complaint. So now a trial came out, they raised an issue as to the amount of shares Mr. Flood has. However, they can't overcome the Illinois Business Corporation Act of 1983. The issuance of shares by a corporation is conclusive evidence of the consideration received by the company. That's under 805 ILCS 5 slash 6.30. Further, the certificate of sharehold shares that was dashed to was the original stock certificate. It was our Exhibit J. The original one was allowed to be taken back to Mr. Flood for this appeal, so it didn't get lost because it's a valuable piece of paper. On that piece of paper, it said Mr. Flood got eight shares. And on the back of it, it was handwritten in Brian Flood's handwriting, an additional two will be given, is given to Mr. Flood, and it's signed by Karen Coley, the president of SBC. She admitted that's her signature on that back of the original stock certificate that was tendered to court. That's in the file. By the issuance of that certificate, that is conclusive evidence of what shares Mr. Flood has. Now there's testimony and a document produced, whenever it was created, I'm not sure, but a document produced regarding the April 16, 2018 shareholder meeting that allegedly occurred. However, Mr. Flood and a non-person involved, Patrick Mele, testified that they weren't there. Mr. Cooney, you're going to have to wrap up your time. Oh, do it? Okay. Let me see if there's any questions from the panel. Justice Anderson? I don't.  I don't at present. Thank you. Mr. Caruso? Thank you, Justice Hedlum, Justice Anderson, Justice Bertani, Mr. Cooney, may it please the I represent the plaintiff, SBC Flood Waste Inc., a garbage hauler. Kind of like the brief, the oral argument of the appellant makes it sound like we had five years of discovery, motion practice or whatever, and then all of a sudden a trial and they lost on the issue of whether we complied with the Dissenting Shareholder Act in the valuation of shares. It didn't happen that way. There were two trials in this case, and it was fortunate that there was a trial at the beginning. It was a Raplevin trial, and that was right in the peak of dissent to the point of chaos on the part of Chris Flood. I'm sorry, I want to interrupt you. I want to be clear on something. So in 11.65, there are four triggers, trigger mechanisms that lead to your rights under 11.70. It looks to me like you're claiming a trigger under 11.65A3. Is that right? I'd have to get the statute in front of me. An amendment of the Articles of Incorporation that materially and adversely affects rights in respect of dissenter shares? Is that what you're relying on? That's the main one, yes. Okay. And then there are three subsections to that one, two and three. Can you tell me specifically which one you're relying on here? Where they say the shares are affected, and that relates to the shareholder meeting of April. Subsection 1, Romanet 1, alters or abolishes a preferential right of such shares. Romanet 2, alters or abolishes a right in respect of redemption, including a provision respecting a sinking fund for the redemption or repurchase of such shares. Romanet 3 is, in the case of a corporation incorporated prior to 1982, limits or eliminates cumulative voting rights with respect to such shares. Which one are you relying on here? Your brief references A3, but there are three subsections to that. It mainly fits in with 3.1, alters or abolishes a preferential right of such shares. Okay. Are you relying on any of the other three triggers in 1165? Or is it just 1165, A3, I, or Romanet 1? Well, I think 3, 1, and 2 apply. And I'm taking guidance from Hunter versus Versillari, which is, this is a redemptive type statute. What happened, what actually happened... Just so I'm clear, is it only A3 that you're relying on then? Is it A1, A2, A4? Are those relevant to you? No, 1 and 2 do not apply. It would be just 3. Just 3. And specifically Romanet 1 and Romanet 2. Okay. Thank you. Go ahead, please. And it relates to the meeting dated April 16th, 2018, that's in the record as E290, the meeting of shareholders where Chris Flood's shares were reduced. Was there an amendment to the Articles of Incorporation? No, there was not. So then how does 3 apply? Well, the minutes of shareholders is the best we have. This is a small corporation that did not follow exactly the format of the statute. So are you saying that 3 does not apply? I mean... 3 applies. In my opinion, I'm saying we didn't strictly follow the statute. The reduction of the shares caused dissent on the part of Chris Flood, which was followed up by him stealing the trucks and so forth. So you keep using dissent as if it were not a term of art. It is a term of art, correct? Related to this statute? Yes. It doesn't generally mean unhappy or arguing in the opposite. It's specific to the statute. It's specific to this action, isn't it? It means dissenting to a corporate action in relation to this statute, and the corporate actions would be 3, 1, or 2. And your evidence of that dissent is a text message, correct? No, my evidence, that's where the judge heard three days of trial that Chris Flood was dissenting. He said he was angry. He punched one of the people in the face, Sean Flood, the nephew. He sent a number of texts saying... That's a dissent under the statute? Pardon me? Is that a dissent under the statute, punching somebody in the face? That's evidence that he was in the broader context of looking at that request for a buyout of the shares dated May 31st, 2019. It puts it in context. That's why I think it was important for the judge to be able to see what was going on in this corporation and use the statute to make a remedy, as I believe was intended by the statute. Another thing to put into context, I wrote the letter from the corporation responding to give a buyout of the shares. And at that point, that was right after the replugging trial. It was written to the trial attorney for Chris Flood. So he's familiar with the statute. I think what's more important is that we went through two years of exchanging documents pursuant to the statute. These instances of objecting, the one Mr. Cooney talked about when there was an objection about appointing the appraiser, that was two years into exchanging documents. And there was never a challenge to the facts. I mean, I'm getting a better, a bigger challenge right now than was ever raised at trial. Mr. Cooney said he lost at the trial. No, he didn't. There was a valuation and the judge made a factual determination as to valuation. There was no pleading challenging that this statute wasn't strictly complied with. There was no affirmative defense. There was no motion. There was a 615 motion to dismiss that was denied, correct? Correct. The judge said it was a matter of fact. She said the, their main challenge was in a footnote of their motion to dismiss saying that the, um, we didn't demonstrate a corporate action of dissent and that my letter didn't meet the timelines of the statute. And our response to that, well, the judge found that those are matters of fact. And I think the case law cited in our brief that you shouldn't turn away a litigant bringing an action under this statute, um, because those time limits are not strictly complied with. That's Hunter Versalotti and other cases that followed it. Uh, in fact, the case that Mr. Cooney, um, cited Fisk, F-I-S-K, uh, which was heard in 1930 said, you shouldn't look literally at the wording of the statute. You should go to the intent of the statute. And the intent is to take a dissenting shareholder, uh, and buy him out. Uh, and it was an extreme situation in our case because, uh, yeah, um, Chris Flood was not only about lowering the number of his shares, he was dissenting about virtually everything and tearing the corporation apart, um, culminating with the stealing of the, um, of the three garbage trucks on that one night. Um, and, and as far as standing, I think the argument is the corporation doesn't have standing to bring this action because we didn't have, we didn't prove a dissenting shareholder or we didn't prove the correct corporate action. Um, but standing as, as cited in the cases in my brief is, uh, is an affirmative defense. There was no affirmative defense about standing. So they waited until five years of litigation, and then we have a trial on value and now they're bringing it up. Um, that, you know, that's, that's the basis of Althenus v. Bunn, A-H-L-E-N-I-U-S, Alenius, where they say the buyout statute, the corporate buyout statute that we're talking about is like a permanent domain. If you have legal problems with it, you should bring it at the earliest possible case, not, not after a trial. We went through all these procedures where Chris Flood really enjoyed getting documents from SPC and, uh, because he was, by then he was aligned with a competitor, Flood Brothers, they're all called Flood. Um, and, uh, that the, so he, he enjoyed that part of the trial, getting information, causing mayhem for SPC. But then after a trial, it's unfair and it's too late. I mean, what if he would have gotten a great value? He probably wouldn't have appealed. So, so that's just not fair to SPC. If they, if they all along thought that, uh, they didn't have, we didn't have legal standing, they should have brought it up before we had a trial on value. And the trial was on value. It wasn't on, was there a corporate action? It wasn't on, did Chris Flood really dissent when he stole trucks and when he asked for a buyout and when he said in writing, I want a separation, but that all sounds like dissent, uh, in a corporate setting to me, but that wasn't the trial because by then we had gotten so far. Ask a question. Um, my recollection suits me or is accurate. The second judge on this matter put that issue aside saying that judge Wheaton had already decided that and we're not going there. Did he, did she, did that judge not do so? Right. He gave them a hint too. He said, nobody filed affirmative matters or summary judgment. So let's go. That would have been a to do it then. But yes, he said she ruled on the legal matter at 2, 6, 15. So there's nothing left than valuation. Uh, and at least that one, there was also the replenishment issues that don't seem to be, uh, kind of contested here. So that was not an appealable order at that point in time, was it? No, but they had, they could have filed a motion for summary judgment at that point. They could have asked for leave to amend, uh, which you can do almost any time. Um, they just didn't do anything but go to trial and then withdrew an intervening complaint. Thank you. So, um, so I believe the court, the trial court did what was brought before it, dealt with the pleadings, managed the valuation in the best way possible, and it got a good result for both sides. Uh, Chris Flugg said he wanted to be separated. He got that. Uh, we wanted to buy him out. We got that. It was, it was a good result, and the only way to overturn it would be to really, um, go against the Alhemia's, uh, and well, and the more like the Fisk case and have, um, form over substance. Thank you for your attention. Thank you, Mr. Crusoe. Um, I have a question. You, you had just finished with the only way to overturn it. What if the wrong decision was made at the 615 motion? That's an avenue which, uh, the appellate is asking us to just say that, uh, just we can get that wrong. That's, that's something we could do also, correct? Um, if you don't believe they waived that by going through with the, uh, two subsequent years. How could they waive it? They, they filed a motion. They filed a motion to reconsider. How, are they somehow required to file a 619, and when they're 615, is this, uh, is dismissed or is not granted, I should say? Um, it, it sounds like their, their real problem was factual, not legal, but, um, I, I, I would just say Judge Wheaton made the correct ruling and, and yes, it's de novo. Uh, Justice Anderson. No other questions. All right. All right. Thank you, Mr. Crusoe. Um, Mr. Cooney. Uh, you're muted, Mr. Cooney. There we are, and I was so eloquent there, so I'll try it again. Um, as to Section 1165A3I, those are for preferred shares. These were common shares. It was common shares. There's no preferred shares. Nothing was taken there. The, all the test, or all the statements regarding the RIP-11 hearing are, are moot. We didn't appeal the RIP-11 hearing. The judge only ruled on the three trucks that were before her and said everything else is going to be in the future. The 2615 motion is an unappealable decision, and it wasn't, and it's done to challenge the legal sufficiency of the complaint, not the facts, but the legal sufficiency, whether they even set forth any allegations, and they haven't. They haven't done that again today. They haven't alleged that they complied with 1170. I heard that it might be because of the shares that he objected to the shares. The document that they're relying on, the board minutes from April 16, 2018, says unopposed, or a unanimous decision to take those shares away, even though a year later they did it again to, for Mr. Melle, so it's questionable when that was created. The statutes must be applied as written. You don't get to go back there and recreate the statutes or add terms. That's the Wells Fargo versus EnviroBusiness case. The court cannot add limitations, exceptions, or conditions in the guise of statutory construction. That's happened here. There's no statutory triggering event occur. The decisions that the council cited are all distinguishable. They were created before the Business Corporation Act was amended. I think Judge Wheaton got it wrong. I think Judge Chapman got it wrong. When Judge Chapman said, Judge Wheaton considered the statute, decided it applies, and the court is not going to retread this round during the hearing for compelling discovery and cutting off discovery and setting a trial in six weeks. We didn't have time to file our motion for summary judgment because we couldn't file a motion for judgment in that short of time. Thank you for your time, your honors. I have a question, if I may, Justice Earl. Is the issue regarding the reduction in the number of shares on the front of their certificate from eight to five a separate issue distinct from the application of the dissenter's rights statute? In other words, do both issues need to be decided in this appeal? Or if the court were to affirm or not affirm the issue of dissenter's rights, would the reduction in shares stand or fall with those decisions? If the court reverses on the decision as to the dissenter rights, and I don't think they need to address anything else. If the court goes in further and decides the issue on the conclusivity by statute as to the shares, you would have a right to do that. But I think reversing the motion to dismiss and the motion to reconsider and the other objections, I think there is six of my name that the dissenter rights act were in there that were raised by Mr. Flood. It would eliminate this case. The motion to dismiss should have been granted with prejudice. And so the termination of five shares would fall with it? Yeah. Yeah. Because then it would have to be determined at a later date as how many shares they are. And I did, you know. Thank you. Thank you. There's nothing further. Thank you very much for your time and your consideration. Justice Anderson, any other questions? No questions. Thank you. I don't have any further either. Gentlemen, thank you very much for joining us this afternoon. We will take the case under advisement and issue a ruling in due course.